CEASAR HOLGUIN *v.* STATE OF INDIANA.

[No. 170S14. Filed May 5, 1971. No petition for rehearing filed.]

*H. Henry Walker, Walker and Holtan,* of East Chicago, for appellant.

*Theodore L. Sendak,* Attorney General, *Lon D. Showley,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from the Lake Criminal Court. Appellant was charged by affidavit with Rape and Rape While Armed, but was prosecuted only as to Rape While

Armed. A trial by jury commenced on September 15, 1969, resulting in a verdict of guilty as charged.

The facts surrounding this case indicate that on July 16, 1968, the prosecuting witness left the home of her parents in East Gary, Indiana, at about 10:30 p.m. with Robert Djurich, a friend of hers. After driving around for a period of time, the couple decided to go swimming, arriving at Marquette Park beach around 11:45 p.m. While swimming, they heard noises and voices coming from the area where they had left a blanket lying on the beach. As they approached that area, they saw some people standing around their blanket, going through the clothing that had been left on it.

One of the boys in the group proceeded to ask Djurich for money and then accused him of lying and produced a gun which was held on the couple when Djurich replied that he had no money on him. Brandishing the gun, one of the boys ordered the couple to take their bathing suits off, adding that he would not hesitate to kill both of them if they did not go along with what was demanded of them.

As soon as the couple disrobed, two of the boys grabbed the victim by the arms and dragged her about thirty feet, where she was forced to the ground. The boys then satisfied their desires while Djurich was held at gunpoint by the assailants. The victim identified the appellant, Ceasar Holguin, as crawling on top of her at one point. Recognizing him as a friend of her brother who had once been over to her house, she called him by name, frightening him such that he got up and ran. Eventually an approaching automobile frightened the attackers and they ran.

Appellant first argues on appeal that he was subjected to excessive bail in contravention of his constitutional rights. We need not determine here whether the bail set for the appellant was excessive because this matter is now moot. It should have been considered through a habeas corpus proceeding, not on appeal to this Court, after a trial where

appellant was found guilty. *Green* v. *Petit, Sheriff* (1944), 222 Ind. 467, 54 N. E. 2d 281.

Appellant next argues that another change of venue should have been granted. On September 13, 1968, a Special Judge qualified pursuant to a motion previously filed by the defendants for a change of venue from the judge of the Lake Criminal Court. On April 4, 1969, the appellant filed for a second change of venue from the Special Judge, alleging that since the Special Judge had heard some of the facts in the case from appellant's co-defendants who pleaded guilty, the appellant could no longer receive a fair trial from this judge, since some of the evidence pertained to the appellant. This Court will grant second changes of venue only where the judge is clearly biased and prejudiced. *Pollard* v. *State* (1969), 252 Ind. 513, 250 N. E. 2d 748, *State ex rel. Gannon, etc.* v. *Porter Cir. Ct. et al.* (1959), 239 Ind. 637, 159 N. E. 2d 713. In this case, the trial was before a jury, and hence we conclude that the fact that the judge had previously heard evidence about the case on a plea of guilty would not necessarily preclude the appellant from receiving a fair trial. There is no showing that any prejudice on the part of the trial judge existed during the proceedings.

Appellant was arraigned and pleaded not guilty on October 11, 1968. After continuances were requested by the appellant in January, 1969, the court set the date for trial as January 23, 1969. The appellant contends that he was detained in jail without a trial from January 23, 1969, to July 23, 1969, said period constituting six months, and therefore under Supreme Court Rule 1-4D he was entitled to be discharged. However, we note from the record that on March 21, 1969, the appellant moved the court for a continuance which was in fact granted until May 22, 1969. Thus, a continuance being granted on appellant's own motion, he cannot claim the benefit of Rule 1-4D.

The defendant filed a motion to "Withdraw Plea and To

Make Proper Motion to Quash" on the grounds that there was no probable cause hearing pursuant to *Kinnaird* v. *State* (1968), 251 Ind. 506, 242 N. E. 2d 500 and *State ex rel. French* v. *Hendricks Superior Court* (1969), 252 Ind. 213, 247 N. E. 2d 519. The appellant, other than citing the above cases, makes no further contention on the point involved.

At common law the issuance of a warrant for arrest is not necessary where the arresting officer has reliable information that a felony has been committed. In this case the ██ victim, who was raped, informed the police and they made the arrest. We know of no more reliable information. In our opinion, it makes no difference whether the warrant was issued before or after the arrest, as under the circumstances in this case where the suspect was being sought and was likely to flee.

The cases cited (*Kinnaird* and *State ex rel. French, supra*) are based upon the case of *Giordenello* v. *United States* (1958), 357 U. S. 480, 78 S. Ct. 1245, 2 L. Ed. 2d 1503. The ██ question arose in that case solely on the issue of whether or not evidence obtained (narcotics) in a search based on the arrest was admissible in evidence. Otherwise, a question of whether an arrest is legal or illegal has no relevancy in a trial, unless it is the basis of a search and the admissibility of evidence so obtained is questioned. There are other remedies, such as habeas corpus, to prevent illegal detention on arrest of individuals without probable cause.

In the case before us, no question is raised about the admissibility of any evidence resulting from any search following the alleged arrest. If the appellant had thought ██ the arrest was made without probable cause, he could have asked for a hearing on that issue, as is done when the issue of admissibility of evidence illegally obtained through a search without probable cause is heard. However, we point out that if probable cause actually existed, such a hearing as to illegality of the arrest might be futile and serve no meritorious cause since, if probable cause existed for the filing

of the charge of rape, as here, a warrant might immediately again be issued upon showing of probable cause. The cases are overwhelming, not only in this state, but in other states, that an officer may arrest for a felony upon reliable hearsay without any warrant being issued whatever. 5 Am. Jur. 2d, *Arrest* § 46; 6 C.J.S., *Arrest* § 6.

Appellant contends that the trial court erred in giving its own instruction to the jury based on the 1965 statute describing the Commission of or Attempt to Commit a Crime While Armed with a Deadly Weapon rather than the appellant's instruction which was based on a subsequent statute. There is authority substantiating the position of the State that the subsequent revision or repeal of an act does not prevent the prosecution from continuing with an action based upon the original version of that act. *McDaniel* v. *State* (1925), 196 Ind. 654, 149 N. E. 161; *State* v. *Lewis* (1924), 195 Ind. 344, 145 N. E. 496. The maximum penalty that may be assessed under the 1969 amendment is more severe than under the 1965 statute. If the 1969 amendment had been deemed controlling, appellant would have been able to object to it as imposing a more severe penalty than the 1965 statute under which the crime was committed.

Appellant also contends that the trial court erred in ordering the appellant and his counsel to stand up and be identified to the jury on voir dire, over appellant's objections, while at the same time, the court denied appellant's motion that the prosecutrix be present in court for a similar identification by the jury. The only reason appellant gives as constituting error is that this decreased the possibility that those witnesses testifying against the appellant would err in identifying the appellant. We do not recognize this as error inasmuch as the State had a right to know if any of the prospective jurors knew the appellant. The prosecutrix had no reason to be in the courtroom during the selection of the jury. There was no error when the court refused to order her to appear and stand before the jury for the purpose of

identification. As to the argument that witnesses would be less apt to err in identifying the appellant, we point out that the appellant could have requested that they be removed from the courtroom, if there indeed were any witnesses in said courtroom during the selection of the jury.

The appellant alleges that the court erred in giving certain instructions. We find however, upon examination, that appellant only made a general objection to all instructions given by the court, without being specific as to any particular instructions and without being specific as to the ground for the objection to such instructions.

Rule 1-7 in effect at the time this trial took place provides in part:

> "No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon specific objections made as above required."

We find therefore, that the appellant has saved no error with reference to instructions complained of on this appeal, and the court did not err, since no specific claimed error was presented the court so that it might have an opportunity, if there was error, to correct same.

Appellant next alleges that he did not fully understand his constitutional rights as set out in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. However, we point out that State's Exhibit Number 2, signed by the appellant, indicates otherwise. This waiver reads in part:

## "GARY POLICE DEPARTMENT

## "(WAIVER AND STATEMENT)

"DATE 7-20-68 PLACE Gary police dept. TIME STARTED 6:45 A.M. — P.M. "I, Caesar HOLGUIN, am 18 years old. My date of birth is April 15, 1968. I live at 2753 Green St., East Gary, Indiana. The person to whom I give the following voluntary statement, R. POWELL, having identified and made himself known as a Detective of the Gary, Indiana Police Department, DULY WARNED AND ADVISED ME, AND I KNOW:

"1. Before making this statement, I was advised that I have the right to remain silent and that anything I might say may or will be used against me in a court of law.

"2. That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

"3. That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversation.

"4. That in the course of any conversation I can refuse to answer any further questions and remain silent, thereby terminating the conversation.

"5. That if I cannot hire an attorney, one will be provided for me.

### "W A I V E R

"I have read the foregoing statement of my rights and I am fully aware of the said rights. I do not desire the services of any attorney at this time and before proceeding with the making of any statement or during the course of any conversation with any police officers, and hereby waive said right. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me to procure any statement or induce any conversation. That the statement I am about to give is the truth and that I give it of my own free will.

"TIME 6:45 A.M.        SIGNATURE /s/ Cesar Holguin"

Detective O'Brien of the Gary Police Department testified that this appellant's constitutional rights were adequately explained to him verbally before he signed the waiver set out above. Officer O'Brien further testified:

"Q. With respect to State's Exhibit No. 2, what, if anything, did you do with that State's Exhibit No. 2, being a waiver, with respect to the Defendant, Ceasar Holquin? Just prior to the signing of it, what did you do with State's Exhibit No. 2, as to Ceasar Holquin?

A. We read it to him and we gave it to him to read, and then he read it.

Q. And did he sign it?

A. Yes, sir.

Q. This is prior to giving the statement?
A. Yes, sir."

Thus we find that appellant was properly advised of his constitutional rights.

Appellant objected to the testimony of one of the State's witnesses on the basis that the State did not properly notify the appellant that said person would be called upon as a witness. The Court had issued an order on December 6, 1968, stating that the State must give notice to the defendants, through their respective counsels, of any witnesses, other than those named in the affidavit, that the State intends to use in order to give the defendants sufficient time for the oral deposition of such additional witnesses.

In this case, the prosecution had only learned on Monday, September 17, 1969, that the witness, Eligio Morales, would not be a defendant for this crime and that therefore they might use him as a witness on September 19, 1969. The trial court offered to give defense counsel a reasonable time to take a written deposition before Morales testified, but the defense did not avail itself of this opportunity. Thus, we find no error on this point.

Considering only the evidence most favorable to the State, we find that there was substantial evidence to support the verdict of the jury. It is not contested that the appellant was with the assailants on the beach during the assault on the prosecutrix. The question that had to be resolved by the jury was the extent of appellant's participation. The prosecutrix testified that she could feel appellant's body against hers and his penis against her body. Eligio Morales, who also participated in the events of that evening, corroborated the testimony of the prosecutrix that the defendant had his penis out as he went down on the girl. Finally, one of the investigating police officers who questioned the appellant concerning his role in this crime was Patrick O'Brien of the Gary Police Department. He testified that the

appellant admitted to him that he "got on top of her" and that he "got a little bit in". *Weaver* v. *State* (1963), 243 Ind. 560, 187 N. E. 2d 485; *Taylor* v. *State* (1887), 111 Ind. 279, 12 N. E. 400. Likewise, there was sufficient evidence that the assailants were armed with a gun and that Ceasar Holguin did hold the gun on Robert Djurich at least one time. Inasmuch as we will not weigh the evidence or determine the credibility of witnesses on appeal, we find that the evidence was sufficient to find the appellant guilty of Rape While Armed.

Judgment affirmed.

Givan, Prentice, DeBruler, and Hunter, JJ., concur.

NOTE.—Reported in 269 N. E. 2d 159.